### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**RITA S. BARTHELME**                                                                            **PLAINTIFF**

**v.**                                       **4:13CV00146 KGB/JTR**

**CAROLYN W. COLVIN, ACTING COMMISSIONER,**               **DEFENDANT**
**SOCIAL SECURITY ADMINISTRATION**

### Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge

Kristine G. Baker.  A party to this dispute may file and serve written objections to this

recommendation.  An objection must be specific and state the factual and/or legal

basis for the objection.  An objection to a factual finding must identify the finding and

the evidence supporting the objection.  Objections must be filed with the clerk of the

court no later than 14 days from the date of this recommendation.[1]  Failing to object

within 14 days may waive the right to appeal questions of fact.[2]  An objecting  party

who seeks to submit new, different, or additional evidence, or to obtain a hearing for

that purpose, must address the following matters as part of written objections: (1) why

the record before the magistrate judge was inadequate, (2) why the evidence was not

presented to the magistrate judge, and (3) details and/or copies of any testimony

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

and/or documents to be proffered at a hearing.  Based on this submission, Judge Baker
will determine the need for a hearing.

## Recommended Disposition

Rita Sue Barthelme seeks judicial review of the denial of her fourth application
for disability benefits.[3]  Barthelme bases disability on depression, a bulging disc in her
lower back, pelvis pain, a heel spur, and chronic obstructive pulmonary disease
(COPD).[4]  She maintains breathing problems, and pain in her back, hip, knees, and left
foot, prevent her from working.[5]  Because she is no longer insured for disability
insurance benefits, this case considers whether Barthelme is entitled to supplemental
security income (SSI).  Because SSI isn't payable before a person applies,[6] Barthelme
must prove she was disabled as of, or after, August 27, 2010.

**The Commissioner's decision**.   After considering the application, the
Commissioner's ALJ determined that, notwithstanding her severe impairments — an
ankle fracture,  obesity, COPD, and a mood disorder[7] — she can do some sedentary

---

[3]SSA record at p. 160.

[4]*Id*. at pp. 190, 200 & 222.

[5]*Id*. at pp. 76 & 205.

[6]20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

[7]SSA record at p. 12.

work.[8]   Because a vocational expert identified available work for a person with Barthelme's limitations,[9] the ALJ determined Barthelme is not disabled and denied the application.[10]

After the Commissioner's Appeals Council denied a request for review,[11] the ALJ's decision became a final decision for judicial review.[12] Barthelme filed this case to challenge the ALJ's decision.[13] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14] This recommendation explains why substantial evidence supports the decision

---

[8]*Id.* at p. 15.

[9]*Id.* at p. 87.

[10]*Id.* at p. 20.

[11]*Id.* at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 2.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

and why the ALJ made no legal error.

**Barthelme's allegations**. Barthelme contends the ALJ should have identified the bulging disc in her lower back, her problem with her knees, and her left foot impairment as severe impairments. She contends the ALJ failed to conduct a psychiatric review technique (PRT) in considering her mental impairment. She complains about the ALJ's evaluation of her credibility. She says she shouldn't be penalized because she can't afford treatment. She suggests the ALJ treated her case as one for drug addiction. For these reasons, she maintains substantial evidence does not support the ALJ's decision.

**Severe impairments**. The first complaint — failing to identify the bulging disc, knees, and left foot as severe impairments — provides no basis for relief because Barthelme's case proceeded to step three of the disability determination process. Step two requires the claimant to show she has a severe impairment, but it does not require the ALJ to explicitly discuss every impairment in an agency opinion. Step two directs a conclusion of "non-disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[15] The process favors the claimant because the regulations permit the claimant

---

[15]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of

to meet her burden by relying on the combined effect of all of her impairments, without regard to whether any particular impairment, if considered separately, is of sufficient severity.[16]  If the claimant meets her burden, the regulations permit her to proceed to the next step of the process.  If the claimant meets her step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.  The record in this case shows the ALJ considered all of the medical evidence and all of the claimant's impairments. The ALJ did not err.

**PRT**.  Barthelme's second argument — failure to conduct a PRT — also provides no basis for review.  "When mental impairments are present, the PRT is mandatory.  The PRT must be documented in the ALJ's written decision, including the findings and conclusions based on the PRT."[17]  One purpose of the PRT is to identify the need for additional evidence, like a mental examination.[18]  The ALJ in this case ordered a mental examination.  The ALJ documented findings and conclusions about mental impairment in the challenged decision.   The ALJ did not err.

---

disability at step two of the disability-determination process).

[16]20 C.F.R. § 416.923.

[17]*Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013).

[18]20 C.F.R. § 416.920a(a)(1).

Barthelme's real disagreement is the result.

**Credibility**.  Barthelme's third complaint — the evaluation of her credibility — provides no basis for relief.  The ALJ followed the required two-step process and considered the required factors.[19]  Thus, the question before the court is whether substantial evidence supports the credibility evaluation.  The following discussion explains why a reasonable mind would accept the evidence as adequate to show Barthelme over-stated her pain and limitation.

**Sedentary work**.  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Barthelme can do some sedentary work.[20] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[21]  Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[22]  In this case, the ALJ reduced sedentary work to simple,

---

[19]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[20]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[21]20 C.F.R. § 416.967(a).

[22]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work: Implications of a Residual Functional Capacity for*

routine, repetitive tasks that do not require: (1) concentrated exposure to pulmonary irritants; (2) climbing ropes, ladders or scaffolds; and (3) more than occasional balancing or climbing of stairs/ramps.[23]

**Back pain**.  Barthelme has complained about low back pain for many, many years, but diagnostic imaging shows no basis for disabling pain.  The most recent imaging shows: (1) a small annular tear at L4/5 with effacement of thecal sac with minimal to mild canal stenosis; and (2) a disc bulge at level L5/S1 adjacent to exiting nerve root on the right side causing minimal impingement of nerve root and slight foraminal narrowing.[24]  These findings represent degenerative changes that occur as part of the aging process, "affect[ing] everyone to some degree, often without causing any bothersome symptoms."[25]  Impingement of a nerve root, stenosis, and foraminal narrowing can cause bothersome symptoms,[26] but the descriptors "small," "minimal,"

---

*Less Than a Full Range of Sedentary Work.*

[23]SSA record at p. 15.

[24]*Id*. at p. 435.

[25]Greg Annussek, 2 The Gale Encyclopedia of Med. 921 (4th ed.).

[26]*See* 2 Lawyers' Med. Cyclopedia § 16.9[C] ("Whether a patient experiences discomfort from the disc disease depends on …canal, and foramen size, as well as the percentage of disc herniated.); Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 III (4th ed.) ("Protruded disks usually cause no symptoms."); 2 Lawyers' Med. Cyclopedia § 16.9 (explaining that a disc "protrusion may or may not compress the spinal cord or nerve roots, causing neurological symptoms and signs"); Mary

"mild," and "slight" do not suggest a cause for disabling pain.  Considering Barthelme

sought no treatment for back pain during the pendency of her application, a reasonable

mind would accept the evidence as adequate to show Barthelme over-stated her back

pain.[27]  The evidence reflects no serious functional impairment that would prevent

lifting 10 pounds or occasionally lifting/carrying articles like docket files, ledgers, and

small tools.  To the extent she suggests she has been penalized because she cannot

afford treatment, she was covered by Medicaid for much of the relevant time period;

she sought no indigent care.

**Foot pain**.  Shortly before applying for SSI, Barthelme started complaining

about left foot pain.[28]  Her podiatrist diagnosed "plantar fasciitis, an inflammation of

the fascia on the bottom of the foot that is sometimes called a heel spur or stone

---

Jeanne Krob & Laura Brasseur, 5 Attorneys Textbook of Med. (3d ed.) 15.32 (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement).

[27]*Accord Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

[28]SSA record at p. 302.

bruise."[29]  "Plantar fasciitis results in moderate to disabling heel pain."[30]  After conservative treatment failed to resolve her heel pain, Barthelme elected heel surgery.[31]  Heel surgery improved her pain, but she underwent a second surgery to remove scar tissue that entrapped a nerve.[32]  The worn nature of her foot cast indicated she had not followed her podiatrist's instructions.[33]  Unfortunately, Barthelme fell shortly after the second surgery and fractured the ankle of the same foot.[34]  She later explained that she had been abusing pain medication and was so wasted that she fell.[35]  Four months later, the ankle had healed.[36]

Although Barthelme was in a cast boot and/or a fiberglass cast for much of the relevant time, a reasonable mind would accept the evidence about foot pain as adequate to show she can do work within the ALJ's parameters because sedentary work involves mostly sitting; walking and standing are required occasionally.

---

[29]Tish Davidson, 3 The Gale Encyclopedia of Med. 1685 (4th ed.).

[30]*Id.*

[31]SSA record at p. 335.

[32]*Id.* at pp. 343-44.

[33]*Id.* at pp. 337-38.

[34]*Id.* at p. 359.

[35]*Id.* p. 457.

[36]*Id.* at p. 550.

Barthelme's worn cast indicates she was walking occasionally.  After reviewing the evidence about the left foot, the agency medical expert reported that Barthelme can occasionally climb stairs/ramps and balance, but she cannot not climb ladders/ropes/scaffolds.[37]  A reasonable mind would accept the evidence as adequate to show Barthelme over-stated pain from the left foot.

**Knee pain**.  Like her back, Barthelme complained about knee pain for several years.[38]  In 2008, she underwent arthroscopic surgery on both knees to repair small areas of damaged cartilage.[39]  Subsequent diagnostic imaging is negative.[40]  At one point during the pendency of the application, she had a little swelling and tenderness in the right knee,[41] but nothing else.  Even then, she had a good range of motion.[42] Even if she has periodic knee pain, it does not prevent sedentary work.  To the extent she has periodic knee pain, the limitation on climbing and balancing accommodates that pain.  A reasonable mind would accept the evidence as adequate to show Barthelme over-stated her knee pain.

---

[37]*Id*. at p. 390.

[38]*Id*. at p. 543.

[39]*Id*. at pp. 531 & 538.

[40]*Id*. at pp. 295, 364 & 562.

[41]*Id*. at pp. 416 & 549.

[42]*Id*. at p. 419.

**COPD**.  COPD is a lung disease that makes it difficult to breathe.  Smoking causes COPD.[43]  Barthelme told the agency that her primary care physician (PCP) diagnosed COPD.[44]  The PCP's treatment note does not substantiate that report,[45] but the agency sent Barthelme for pulmonary function testing.[46]  Testing shows a mild degree of restrictive lung disease.[47]  The descriptor "mild" suggests nothing preventing sedentary work.  Despite being advised against smoking[48] — because smoking is associated with chronic pain[49] — Barthelme continues to smoke.  A reasonable mind would accept the evidence about COPD as adequate to show Barthelme over-stated her breathing problems because she has a mild airway

---

[43]Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1026 (4th ed.).

[44]SSA record at p. 216.

[45]*Id*. at p. 323.

[46]*Id*. at p. 219.

[47]*Id*. at pp. 379-81.

[48]*Id*. at p. 515 (by rehabilitation physician during 2007 evaluation for back pain).

[49]Toby N. Weingarten, Yu Shi, Carlos B. Mantilla, W. Michael Hooten & David O. Warner, *Smoking and Chronic Pain: A Real-but-Puzzling Relationship*, Minn. Med., Mar. 2011 (discussing evidence indicating smokers are more likely than nonsmokers to experience chronic pain).

obstruction and she still smokes.[50]  To the extent COPD interferes with her ability to work, the ALJ eliminated work environments with pulmonary irritants that might interfere with Barthelme's breathing.

**Mental impairment**.  Barthelme sought mental health treatment in 2008,[51] but she had no mental health treatment during the relevant time period.  Instead, she underwent court-ordered treatment for drug addiction.[52]  At that time, she reported long-term abuse of various controlled substances, including psychotropic drugs.[53]  She was weaned off those drugs and took no psychotropic medications at the time of her hearing.  When asked why she receives no mental health treatment, she stated, "It's hard for me to be around a group of people like that."[54]  When asked why she can't work, she did not identify mental impairment; she identified pain in her back, foot, and knees.[55]

During her first mental evaluation — for the third application — Barthelme

---

[50]*Accord McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) (rejecting claimant's argument that COPD posed a non-exertional limitation where claimant complained about shortness of breath and doctor instructed her to stop smoking).

[51]SSA record at p. 230.

[52]*Id*. at p. 470.

[53]*Id*. at pp. 456 & 464-65.

[54]*Id*. at p. 77.

[55]*Id*. at p. 76.

demonstrated little difficulty in comprehending and carrying out either simple or complex tasks.[56] She demonstrated no limitation coping with the typical demands of basic work like tasks.

During the second evaluation — for the fourth application — the examiner suspected exaggeration or malingering, observing that she quickly stated "I don't know" or "I don't remember" when answering questions she answered during the first evaluation.[57] The examiner diagnosed substance abuse in remission and adjustment reaction depression — a mood disorder.[58]

A reasonable mind would accept the evidence as adequate to support the credibility evaluation as to mental limitation, because in the absence of mental health treatment, it is unclear why Barthelme took psychotropic drugs — drug addiction or mental symptoms — and because she receives no mental health treatment. The evidence is adequate to support the ALJ's decision because the ALJ limited Barthelme to simple, routine, repetitive tasks. To the extent mental symptoms limits the ability to work, the ALJ's parameters account for that limitation.

**Vocational evidence**. After determining Barthelme's ability to work, the ALJ

---

[56]*Id*. at p. 247.

[57]*Id*. at p. 314.

[58]*Id*. at p. 312.

asked a vocational expert about available work for a person with Barthelme's limitations.[59] The vocational expert identified representative sedentary work.[60] The vocational expert's answers show work exists that Barthelme can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[61] Because such work exists, Barthelme is not disabled under social security disability law.

**Conclusion and recommendation**. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Barthelme's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

It is so ordered this <u>9th </u>day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[59]*Id*. at pp. 86-87.

[60]*Id*. at p. 87 (identifying machine tender, inspector, and assembler as representative work).

[61]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).